Ms. Kurtz, we'll hear from you first. May it please the Court. Mr. Corn pled guilty to possession of a firearm in the school town, in violation of 18 U.S.C. 921. He served his prison term, was put on supervised release, committed violations, and was revoked. The Court imposed a revocation sentence of 20 months imprisonment and one year of supervised release. The question in this appeal is whether that is an illegal sentence, defined as one exceeding the statutory maximum authorized by law. The answer depends on whether 922 Q violations are Class D felonies or whether they are misdemeanor offenses. The government argues first that Mr. Corn has waived this issue and that this Court cannot even consider it. I think that that is incorrect for at least two reasons. One, waiver is an intentional relinquishment or abandonment of a known right. Here, there's no indication in the revocation transcript, or any other part of the record for that matter, indicating that any time, defense counsel, hospital attorney, judge, defendant, were aware that 922 Q violations are defined as misdemeanors under 924 K4. Wouldn't this not be better characterized as invited error then? I mean, defense counsel here asks for something on appeal that you're suggesting is an illegal sentence. That strikes me as maybe not waiver, but it's certainly an invitation to court to commit error. And I'm wondering your thoughts on that, and if it is invited error, what we do with that. Invited error can't waive a claim for appeal. It depends on what you invite. You cannot invite an illegal sentence in excess of statutory maximum law. Why not? Isn't that exactly what happened here? And maybe it has to deal with the legal definition of inviting, but I mean, defense counsel said, give me a sentence over a year. And the district court gave a sentence over a year, quite a bit over a year. She asked for a year today. Defense counsel asked for an illegal sentence. She did. I don't think anyone... And I understand no one in the room probably knew, so I don't mean that as an accusation. I don't think anyone understood it. I would say, though, that... well, two points, actually. In the plea agreement, in favor of your argument of invited error, are statements that this is a Pulaski felony, and the SR terms are up to three years. In my favor is paragraph 15b, which says he retains the right to appeal any illegal sentence. So even if you ask for it, 15b doesn't contain any limiting language that would say, if you ask for it, then I can give you an illegal sentence. So I think you've got contradictory terms in a plea agreement. Ambiguity goes against the drafter, the government, and he retains his right to appeal. Second thing I would say, and the rue is cited in the brief, it's not exactly on the line of the question, but I find the rue interesting because not only did the defendant in that case not raise it before the district court, he didn't raise his claim of service of the error even before the appellate court. And the court's sua sponte decided that his sentence under the Armed Career Criminals Facts Act was an illegal sentence because he didn't have the records of no non-predicate offenses for an act of sentence over 10 years. So he didn't contest his act of priors ever, at any point. And yet the court was willing to sua sponte, jump in and say, he didn't waive that claim or actually make it illegal. I think on the waiver, I feel we're in a strong position. The question then becomes, well, does it rise to the level of plain error? And it must be plain or obvious. The language of the statute, I think, is critical here. 924A4, last sentence. Except for the authorization of a term of imprisonment of not more than five years, made in this paragraph, for the purpose of any other law, a violation of 922Q shall be deemed a misdemeanor. If you accept the government's argument, it is interpreting that statute, 924A4, in one of two ways. Either 922Q violations are defelony for some statutes, or they're misdemeanors for purposes of other statutes. We are interpreting a penal law. It must give adequate notice to people who are of a mind to violate it as to what their potential penalties are. When you say, well, maybe it's a defelony, maybe it's a misdemeanor, it is so ambiguous that no one can interpret, well, when is it a misdemeanor? And when is it a defelony? The government's partly. Well, if it's that ambiguous, then don't you lose on a plain error case? Well, what I'm saying is the government's interpretation is ambiguous. The statute is not ambiguous at all. It says it's a misdemeanor for purposes of any other statute other than 924A4. That's not what the Fourth Circuit found. Would you agree that that would be in conflict? And I understand that was an unpublished opinion in Grant. But the way I read that is they found multiple interpretations of the statute at least plausible. The first thing I would say about that is that Grant followed the First Circuit case, Alvarez, Sanchez, pretty much on down the line. And it said, Alvarez, the First Circuit said, a 922P offense is a misdemeanor except for a misdemeanor, and a felony under distinguished by their authorized terms of the prison. That language never appears anywhere on 924A4. So you are adding language to the statute, which courts cannot do. That creates a separation of powers problem. You are taking out language, but it's a misdemeanor, which courts also cannot do. And it violates the cardinal rule of statutory interpretation. The language of the statute applies. If you look at 922Q violations as always D felonies, which is basically what Grant and Alvarez and Sanchez do, then you are dismissing the last sentence of the statute as surplus. Again, that violates standard statutory interpretation rules. The point of interpretation is to give every word of a statute meaning, if you can. It also violates, well, in order to get to a 924A, or excuse me, a 922Q violation, in order to get to that vandal classity felony, you have to go to section 3559. 3559 is a general statute. 924A4 is a specific statute. To reach that interpretation, you are again violating the principles of statutory interpretation. And when doing that, you don't look to, and this is, I'm referring to Lakowski, who was out of this circuit, you don't look to come up with any possible interpretation. You must come up with a plausible interpretation that follows the canon of statutory interpretation. And Alvarez and Grant did not do that. Thank you. Thank you. All right, Mr. Wagner, you may proceed. Thank you. May it please the Court, I'm David Wagner for the United States. I'd like to start with the statutory interpretation question, and I'll circle back to the waiver a little later on. The difficulty with Mr. Horne's position is that it ignores the language in 3559. And that's because 924A4 does not include a particular letter grade for the misdemeanor. Of course, three classes of misdemeanors, Class A, B, and C. And 924A4 does not specify a letter grade. Now, The counselor does specify that it's a misdemeanor. So what part of the word misdemeanor means felony? Well, I grant you there that it specifies misdemeanor. But So you want us to write a new statute? I don't want you to write a new statute. And to be clear, I'm not arguing necessarily in favor of either interpretation  But I don't think you can ignore part of 3559 that says it controls the classification of any offense that is not specified by letter grade in the section defining it. Of course, 924A4 doesn't specify that. Doesn't the more specific statute control over the more general? I don't know that you could even say that 924A4 is the more specific statute in this case. And I think the letter grade thing is not just a question of these two statutes. It's really important for other statutes. Because a number of sentencing statutes depend on particular letter grade offense. For example, fines, the available fines for a misdemeanor vary based on what class the misdemeanor is. Where it can fine up to $100,000 for a class A and up to $5,000 for a class B or C. What class of misdemeanor is a 922Q violation, 924A4 doesn't answer that question. So it's not clear what the available fine could be. But would the ambiguity be construed in favor of the State? I don't think we construe statutes, ambiguity in the statute, in favor of the non-trafficking party like a contract. But, I mean, I suppose the rule of lenity might not. In terms of what type of imprisonment is going to be imposed upon someone. I could see an argument that the rule of lenity would call for the lower class of misdemeanor. But it's not even necessary to go there if you rely on 3559. Another thing to consider is that supervised release, it's not clear that if it's a generic misdemeanor there could even be a term of supervised release. And that's because 3583 specifies what terms of supervised release can be imposed for various classes of felonies and misdemeanors. And for a Class A misdemeanor, a term of up to a year can be imposed. But there's no term specified for a Class B or C misdemeanor. In fact, the statute says that other than petty offenses, which are Class B and C misdemeanors, a term of one year can be imposed. But what do you do with petty offenses? So you could envision a circumstance where a defendant would say, well, no supervised release is authorized at all for 922Q, because it could be a B Class B or C misdemeanor. That's just the statutes, I freely admit, don't work together very well, and I think there's intuity. Our position is that what the district court did was not plain error. And so, counsel, when we assess whether plain error has occurred, we have to look at the impact on fairness, integrity, and public reputation of judicial proceedings. If the court is allowed to impose a sentence that's unauthorized by law, how does that impact the fairness, integrity, and public reputation of judicial proceedings? Well, you don't get to that fourth factor, of course, until you find the first three factors. First, you have to find that there was an error, and that it was. Only after doing that, and finding that it affects the standard, only after making those findings, can we move to the fourth factor. But in this case we can't. So if we ignore the plain language of the statute, then we don't have to get to the fourth factor. If you, well, there's the plain language of 924-84, and there's a plain language of 35-59. Those two plain languages don't mesh together. It's a fair question, Judge Gross, but I note that in our brief, we acknowledge that if this court finds plain error, the third and fourth factors of plain error, we're not disputing those. So we're really not disputing that there would be the fairness, integrity, or public reputation to be adversely affected in this case. What we're really focusing on is the plainness of any error in that prong of the plain error review. I would note, though, that Mr. Corn, in this particular case, agreed in his plea agreement that this was class D. So I think that would play into the fairness and public reputation. If somebody enters into a contract and says, I agree that this crime is what it is and this is what the sentence is, that that would play into that. Roberts, let me ask you about that in terms of waiver or invited error. He did specifically put in the plea agreement that he could appeal any sentence that was unlawful. Did he not? No, I would not agree that he did. The plea agreement, the waiver in the plea agreement specifies that certain claims are waived. But certain claims are not waived by that waiver. It doesn't guarantee the right to appeal claims that are waived through other means. It simply carves out illegal sentence claims from the waiver in the plea agreement. So to the extent a defendant So some illegal sentences were accepted? Not from the waiver in the plea agreement. But again, we're not arguing that the waiver is based on the plea agreement. We did not invoke the waiver provision in the plea agreement. We're arguing invited error in this case. But you didn't really brief them? It was mentioned in passing in the brief. Well, the plea agreement was not raised in the plea agreement. No, the invited error. Invited error. Oh, well, I certainly think we did. We cited United States v. Campbell, which is one of this Court's primary invited error cases. And I think our brief specifically talks about invited error. I could go back and give you the exact page, but I'm pretty sure we are arguing It was mentioned. Yeah. And that's what we're arguing. But it's sort of all the difference between invited error and waiver, I don't know, is entirely clear. And I think even the Campbell opinion sort of says whether it's invited error or waiver, it's waived. And the same sort of applies in this case, because I know Mr. Corn has argued that, you know, there was no intentional relinquishment, right? But I would respond that when you take a particular position. I'm sorry, counsel. Go ahead. Take a particular position before the district court. You are intentionally relinquishing the right to take the opposite position later. It could be termed waiver. It could be termed judicial estoppel. It's the same principle. You can't take a position before the district court and then say, well, I'm going to take the opposite position later when it suits my interest to do so. By taking that particular position, you are intentionally relinquishing the right to take the opposite position. For that proposition, I would point the court to the recent opinion. I'm going to butcher the pronunciation of the name. I think this is how it's said. I could be way off on that. But I think that's exactly what this court was saying. And in fact, that opinion invokes the intentional relinquishment language from Obama to make this exact point. So does it make a difference whether the judge gave the requested year today versus the five years? If you give it a year and a day, then you'd be saying, well, that's what he asked for. How can he appeal? He's obviously waived the year and a day. Sure. But does it change the analysis at all? Or are you saying that because he's basically waived his legal position, that it doesn't matter what the ultimate sentence was? The latter, Judge Gallatin. Because he's taken the position that the available supervised revocation term is up to three years, whether he asked for a year and a day, a year and a month, two and a half years, it doesn't matter. It's that legal position and the inability to take the opposite legal position later on. One issue that came up. Did you find any case like that? Or are all the invited error cases where the judge gave exactly what the party requested? Anything come to mind? I can't remember. Well, I think possibly the Love case, actually, from the Fourth Circuit. That was the case that was cited in this court's opinion in Campbell. A very factually similar situation. I don't want to say 100%, Judge Gallatin, and I had to go back and check, but I think maybe in that case the defendant asked for two years and the judge gave a longer term. I'd have to double check, but I think possibly in that case. That's the best I have. The Love case. Okay. It's actually the Eleventh Circuit, but we'll check it. Oh, I apologize. Eleventh Circuit. Eleventh Circuit. One thing I'd like to briefly touch on is this question of subject matter jurisdiction. We filed a 20-page letter with the court appointing the court to a couple cases on this topic. Subject matter jurisdiction, of course, goes to the district court's power to hear a case. The district court had power to hear this case. Mr. Horne took that position in his opening brief on appeal. This question of the statute for a maximum is not a question of subject matter jurisdiction. And for that proposition, I'd appoint the court. The best I found was Chief Justice Roberts' dissenting opinion of Dolan makes this point. I don't think it was an issue for the full Supreme Court, but it wasn't a dissenting opinion. Unless there are any further questions, I would ask the court to do so. Thank you for your argument. All right. Hold on, Mr. Erste. I'd prefer to invite the public before you proceed. Excuse me. Just a couple quick points. I think it is telling that in the government's analysis, it has to start with Section 3559 in order to achieve the outcome that it wants to achieve in this case, which is totally ignoring 924A4, which is the type of felony sentencing. I believe counsel argued that part of the problem with 3583E3 is that it sets forth terms of imprisonment on supervised release by felony grade. It does not tell you what to do, though, with respect to class ABC misdemeanors. I think that's actually incorrect. It says in that statute, in any other case, so in any other case, not in this case, the felony, the maximum term of imprisonment is one year. The Love case is a strange case. I think it's factually distinguishable. Because in that case, the offense of conviction had no specific range of punishment. I think it was a contempt offense, maybe under 18 U.S. 401. You can go all the way up to life. What the defendant was arguing in that case is just basically it's unfair when you have an unspecified term to automatically make it a felony, meaning you have five years of supervised release. He wanted to use the guideline range and then plot that over the 3583, whatever range it could be closest to. I don't think in Love, my reading of it is you never really encountered the question that the SR term was legal. It just wasn't up to that point. Thank you to both counsel. The case is submitted. The court will file a decision in due course.